NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BOUDER, et al, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiffs, | : | **OPINION** |
| vs. | : | |
| | : | Civil Action No. 06-CV-4359 (DMC) |
| PRUDENTIAL FINANCIAL, INC., | : | |
| et al, | : | |
| | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for summary judgment by Defendants Prudential Financial, Inc. and The Prudential Insurance Co. (collectively "Prudential" or "Defendants") pursuant to Fed. R. Civ. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Defendants' motion for summary judgment is **granted**.

## I. BACKGROUND[1]

Plaintiffs bring this lawsuit as a collective action under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all other persons similarly situated who suffered damages as a result of the violations of the FLSA, and of the Labor Laws of the States of California, Hawaii, Illinois, Michigan, Missouri, Montana, Nevada, New Jersey, New York, Ohio, Oregon, Pennsylvania, and Washington, and as a result of other wrongful conduct and improper labor practices allegedly committed by

---

[1] These facts have been adopted from the parties's respective submissions.

Defendants.  Plaintiffs Third Amended Class Action Complaint ("Complaint" or "Compl.") alleges a "Federal Collective Group," thirteen "State Law Classes" and four sub-classes, including a "State-Law Overtime Sub-Class," a "State-Law Charge Back Sub-Class," a "State Law Waiting Time/Penalties Sub-Class" and a "State Law Rest/Meal Periods/Unfair Competition Sub-Class."

On September 15, 2006, former Prudential agents Jeffrey Bouder, Brian Kennedy and Carol Kennedy filed a Complaint against Prudential and unnamed subsidiaries and individuals claiming that (I) Prudential violated the FLSA and the Pennsylvania Minimum Wage Act by not paying overtime premium pay for work in excess of 40 hours in any week and (ii) Prudential violated the Pennsylvania Wage Payment and Collection Law by unlawfully requiring Plaintiffs to pay for certain expenses incurred in selling insurance for Prudential. Bouder and the Kennedys also purported to bring their claims on behalf of similarly-situated agents registered through the Financial Industry Regulatory Authority ("FINRA") and associated with Pruco Securities, LLC ("Pruco"), Prudential's wholly-owned broker dealer subsidiary, constituting (i) a nationwide collective action under the FLSA ("Federal class") and (ii) a  statewide class action under the laws of Pennsylvania.

Prudential filed an Answer on November 29, 2006, denying all of the substantive allegations of the Complaint and the alleged statutory basis for collective and class treatment, and asserting a counterclaim against the Plaintiffs and any putative opt-in or other class members for unjust enrichment, set-off and recoupment. (Dkt. No. 13). On March 27, 2008, in response to Bouder's motion for conditional certification, this Court conditionally certified a class of insurance agents (Dkt. No. 53), and on May 5, 2008, approved an opt-in notice which was mailed (Dkt. No. 59).

On January 15, 2009, Plaintiffs filed a Consolidated Amended Collective and Class Action Complaint ("Am. Compl."), later amended on March 16, 2009, seeking to represent a sub-class of

putative Plaintiffs asserting claims under the state overtime and/or wage payment statutes of fourteen (14) states, a class action covering all states for "breach of contract" and retaining the "assumpsit" claim for the Pennsylvania class (Dkt. Nos. 102, 110).

On April 6, 2009, Prudential answered the Amended Complaint and simultaneously moved under Fed. R. Civ. P. 12(b)(6) to partially dismiss twelve sub-counts. On December 2, 2009, the Court granted the motion as to six claims, denied the others and granted Plaintiffs leave to amend their Complaint in certain instances to include an express breach of contract claim. On January 20, 2010, Plaintiffs filed a Third Consolidated Amended Collective and Class Action Complaint ("3d Am. Compl.") wherein they abandoned their claims under Indiana and Massachusetts law, removed five named Plaintiffs from the action, and adjusted the statutory periods for certain claims. (Docket No. 140).

## II.   LEGAL STANDARD

"A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." Gaston v. U.S. Postal Serv., 2009 U.S. App. LEXIS 5673 (3d Cir. 2009).  However, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(b).  "[T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Cartrett, 477 U.S. 317, 325 (1986).  "[R]egardless of whether the moving party accompanies its

summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56©." Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

> When a motion for summary judgment is properly made and supported, [by contrast,] an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal citations omitted).  Indeed, "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." See Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990).  Rule 56(e) permits "a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Id. (quoting Lujan v. National Wildlife Fed'n., 497 U.S. 871, 889 (1990)).  "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are the unsupported allegations of the pleadings." Schoch, 912 F.2d at 657.

## III.   DISCUSSION

Defendants move for summary judgment on the ground that Plaintiffs constitute "outside salesmen" in accordance with the FLSA and are, therefore, exempt from the minimum wage and maximum hour requirements outlined under the FLSA.  Further, Defendants contend that Plaintiffs'

primary duty is "making sales" and their other activities are "incidental to or in conjunction with" their sales efforts and therefore equally "regarded as exempt work," under long standing DOL Regulations. 29 C.F.R. § 541.500(b).

In response, Plaintiffs argue that "Plaintiffs do not qualify for the outside sales exemption because their primary duty was not sales, but 'administrative[,]' i.e. financial advice and service." Plaintiffs' Opposition Brief ("Pl. Br.") at 26.[2]  Moreover, Plaintiffs assert that the issue of primary duty raises a material dispute involving questions of evidentiary weight and credibility.

The FLSA exempts from eligibility for overtime pay "any employee employed in a bona fide executive, administrative, or professional capacity . . .  or in the capacity of an outside salesman." 29 U.S.C. § 213(a)(1). "Exemptions from the FLSA are to be narrowly construed against the employer, and the employer has the burden of establishing an exemption." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2009); Moreau v. Klevenhagen, 508 U.S. 22 ("exemptions from the [FLSA] are to be narrowly construed."). Pursuant to 29 C.F.R. § 541.500, outside sales employees include:

(a) The term "employee employed in the capacity of outside salesman" in section 13(a)(1) of the Act shall mean any employee:

---

[2]

 Notably, although Plaintiffs allege the contrary, in the initial Complaint, Plaintiffs indicated that "[t]he primary duties of plaintiffs and the Classes do not consist of performing administrative or managerial tasks, but rather of selling insurance, securities and other financial products. "[A]n employee whose primary duty is selling financial products does not qualify for the administrative exemption". 29 C.F.R. §541.203(b). Pl. Compl., ¶ 39.  By contrast, the Second Class Action Consolidated Complaint ("Second Am. Compl.") alleges the Plaintiffs "have a primary duty other than sales, because their work includes collecting and analyzing a client's financial information, advising the client about the risks and the advantages and disadvantages of the insurance and other financial products available from Prudential in light of the client's individual financial circumstances, recommending to the client only those products that are suitable for the client's particular financial status, objectives, risk tolerance, and other investment needs, and servicing 0r promoting Prudential's insurance and other financial products."  Second Am. Compl., ¶ 31.

5

(1) Whose primary duty is:

(i) making sales within the meaning of section 3(k) of the Act,[3] or

(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

(b) The term "primary duty" is defined at § 541.700. In determining the primary duty of an outside sales employee, work performed **incidental to and in conjunction** with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

Pursuant to 29 C.F.R. § 541.700:

(a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the

---

[3]

"Sale" or "sell" includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition. 29 U.S.C. § 203(k).

sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

(c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

"Sale" or "sell" includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition. 29 U.S.C. § 203(k). While an issue concerning how an employee spends his working time constitutes a question of fact, the issue of whether particular activities exempt an employee from the FLSA is an issue of law. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986). "Courts applying the outside salesperson exemption consider whether sales are made by the employee but also look for hallmark activities including (1) whether the employee generates commissions for himself through his work, (2) the level of supervision of the employee, (3) the amount of work done away from the employer's place of business, (4) whether the employee independently solicits new business, and (5) the extent to which the employee's work is unsuitable to an hourly wage." Chenensky v. New York Life Ins. Co., No. 07-11504, 2009 U.S. Dist. LEXIS 119549, *12 (S.D.N.Y. Dec. 22, 2009). In that case, although Chenensky attempted to represent his function as a "fact-finder" or "counsel," the Court concluded that the evidence plainly shows that Chenensky's primary duty at New York Life was to sell insurance." Id. "Although [a representative] also provided service to existing customers, this duty was 'incidental to and in conjunction with the employee's own outside sales' because the service that [the representative] provided to these

customers furthered [the representative's] ability to make sales that increased [the representative's] commission." Gregory v. First Title of Am., Inc., 555 F.3d 1300, 1306 (11th Cir. 2009) (citing Stevens v. SimplexGrinnell, LLP, No. 06-11055, 2006 U.S. App. LEXIS 17345 (11th Cir. 2006)).

Plaintiffs work on commission.  Plaintiffs sell insurance, annuities and other financial products.  Plaintiffs employment was subject to termination for failure to satisfy a requisite number of new business sales on an annual basis.  Employees within the first two years of employment were subject to termination for failure to meet new business sales on a quarterly basis  Plaintiffs' initial Complaint states that Plaintiffs' primary duty was making sales, although this representation is later omitted from an Amended Complaint.  Plaintiffs' Amended Class Action Complaint asserts that although Plaintiffs do make sales, their "primary duty" consists of fact-finding or advising the customer.  Plaintiffs' deposition testimony demonstrates, despite Plaintiffs' contentions to the contrary, that Plaintiffs were regularly engaged in making sales at the homes of customers, away from the employer's place of business.  Similar to Chenensky, although Plaintiffs attempt to cloak the sales practice under the guise of financial advice and service, those functions are collateral and incidental to the sale of insurance, annuities and financial products.  Accordingly, Plaintiffs are "outside salesmen" exempt from the FLSA and summary judgment is **granted.**

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **granted.** An appropriate Order accompanies this Opinion.

         S/ Dennis M. Cavanaugh
         Dennis M. Cavanaugh, U.S.D.J.

Dated:        August __30__, 2010
Original:    Clerk
cc:          All Counsel of Record
           Hon. J.A. Dickson, U.S.M.J.
           File