NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY BOUDER, *et al*, | Hon. Dennis M. Cavanaugh |
| Plaintiffs, | OPINION |
| v. | 2:06-cv-04359 (DMC)(MF) |
| PRUDENTIAL FINANCIAL, INC., *et al*, | |
| Defendants. | |

**DENNIS M. CAVANAUGH, U.S.D.J.**

This matter comes before the Court upon Motion of Lead Plaintiffs Jeffrey Bouder, John Costa, Christine Musthaler, Steven Song, David Uchansky, Alan Scott Rudo, Ryan Homes, Timothy Munson, Joseph Gawron, Sandra King, Julie Sullivan, Michelle Otten, Vincent Camissa, Goran Oydanich, Robert Paventi, Alex Tejada, Julie Stalla, Michael Todd Hinchliffe, and Tracy Chosa (collectively "Plaintiffs") for Class Certification pursuant to FED. R. CIV. P. 23. (Jul. 15, 2010, ECF No. 211). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. Based on the submissions of the parties, and for the reasons expressed herein, it is the decision of this Court that Plaintiffs' Motion is **denied**.

**I.    BACKGROUND**[1]

Plaintiffs filed this lawsuit as a collective action under the Federal Fair Labor Standards

---

[1] These facts have been adopted from the parties' respective submissions.

Act ("FLSA"), 29 U.S.C. §§ 201, *et. seq.*, and as a class action pursuant to FED. R. CIV. P. 23 on behalf of themselves and all other persons similarly situated who suffered damages as a result of the violations of the FLSA, and of the Labor Laws of the States of California, Hawaii, Illinois, Michigan, Montana, New Jersey, New York, Ohio, Oregon, Pennsylvania and Washington, and as a result of other wrongful conduct and improper labor practices allegedly committed by Defendants Prudential Financial, Inc. and The Prudential Insurance Company of America (collectively "Prudential" or "Defendants").[2] Plaintiffs Third Consolidated Amended Collective and Class Action Complaint ("Complaint") seeks to certify a State Law Class comprised of eleven State Law Classes, seven of which are further divided into separate State Law Overtime and State Law "Deductions" Subclasses. (Jan. 20, 2010, ECF 120).

Prudential employed Plaintiffs as insurance agents to gather client information and sell Prudential's line of financial products, including life insurance and annuities. Each of the potential State Law Subclasses further consists of three different groups of agents: (1) Financial Services Associates; (2) former "Prudential Representatives;" and (3) Statutory Agents.

Plaintiffs have alleged that Prudential uniformly violated provisions of state laws that required overtime compensation for the proposed class members who worked more than 40 hours per week and that prohibited certain wage deductions. Plaintiffs further alleged that Prudential carried out these violations by misclassifying all of its insurance agents as outside salespersons exempt from state and federal overtime requirements and by adopting policies designed to arbitrarily re-classify its captive insurance agent workforces as independent

---

[2] The Court granted Summary Judgment in favor of the Defendants as to Plaintiffs' FLSA Claims in its August 31, 2010 Opinion. (ECF No. 242). Thus, only Plaintiffs state law claims remain.

contractors.

Plaintiffs filed the present Motion and Certification Brief ("Pl. Cert. Br.") to Certify Class on July 10, 2010 seeking: (1) certification of a State Law Class consisting of eleven State Law Subclasses, seven of which contain further Subclasses; (2) appointment of Plaintiffs as representatives of their respective classes; and (3) appointment of Plaintiffs' attorneys as class counsel. (ECF No. 211). Defendants filed Opposition to Plaintiffs' Motion ("Def. Opp. Br.") on August 30, 2010, contending that the State Law Subclasses are overly broad and unmanageable, failing to meet the predominance and superiority requirements of FED. R. CIV. P. 23(b)(3). (ECF No. 228). Plaintiffs filed a Reply ("Pl. Rep. Br.") on October 4, 2010. (ECF No. 249). The matter is now before this Court.

## II.  LEGAL STANDARD

Class certification under FED. R. CIV. P. 23 has two primary requirements. First, pursuant to Rule 23(a), the party seeking class certification must satisfy four (4) elements: (1) the existence of numerosity of the class; (2) commonality of the questions of law or fact; (3) typicality of the named parties' claims or defenses; and (4) adequacy of representation. Second, the party must demonstrate that the class fits within one of the three categories of class actions set forth in FED. R. CIV. P. 23(b). Rule 23(b)(1) allows certification of a class if prosecuting separate actions would result in prejudice either to either party. In re Ikon Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457, 466 (E.D.Pa. 2000). Rule 23(b)(2) allows certification of a class where the party opposing the class has acted or refused to act in a manner generally applicable to the class, so that final injunctive or declaratory relief would be appropriate with respect to the

class as a whole. Certification under Rule 23(b)(3) is permitted when the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310 (3d Cir. 2008) (quoting FED. R. CIV. P. 23(b)(3)). "The twin requirements of Rule 23(b)(3) are known as predominance and superiority." Id.

### III. DISCUSSION

FED. R. CIV. P. 23(B)(3)

In addition to satisfying the four prongs of Rule 23(a), a proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Plaintiffs here rely on Rule 23(b)(3), which states that a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) includes a nonexclusive list of relevant factors that a court may consider in making these determinations:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In deciding whether or not to certify a Rule 23 class, the Court must analyze how the issues will "play out" before a trier of fact. In re Hydrogen Peroxide, 552, F.3d 305, 311 (3rd Cir. 2009) (citations omitted). The Court of Appeals in this circuit further discussed the

manageability factor of Rule 23(b)(3) in <u>Newtown v. Merrill Lynch, Pierce, Fenner & Smith, Inc</u>. stating:

> Turning to manageability, the District Court's evaluation must be "granted a wide range of discretion." <u>Link v. Mercedes Benz of N. Am., Inc.</u>, 550 F.2d 860, 864 (3d Cir.1977). "Manageability is a practical problem, one with which a district court generally has a greater degree of expertise and familiarity than does the appellate court." <u>In re Sch. Asbestos Litig.</u>, 789 F.2d at 1011. It encompasses "the whole range of practical problems that may render the class action format inappropriate for a particular suit." <u>Morton Eisen v. Carlisle & Jacquelin, et al</u>, 417 U.S. at 164, 94 S.Ct. 2140.

<u>Newtown v. Merrill Lynch, Pierce, Fenner & Smith</u>, 259 F.3d 154, 191 (3d Cir. 2001).

Here, Plaintiffs seek to certify eleven State Law Classes, seven of which contain additional deductions subclasses, for a total of eighteen subclasses. Plaintiffs argue that the differences between the pertinent state laws are minor and readily manageable. (Pl. Rep. Br. 19). Plaintiffs cite <u>In re Prudential Ins. Co. America Sales Prac. Litig.</u>, 148 F.3d 283, 315 (3rd Cir. 1998) and <u>In re School Asbestos Litigation</u>, 789 F.2d 996, 1010 (3d. Cir. 1986) for the proposition that a nationwide assertion of state-law claims may be certified for class resolution if the plaintiffs possess sufficiently similar rights under the laws of all states that the court can readily control for differences among various jurisdictions. (Pl. Rep. Br. 19). Both of those cases are dissimilar from the present matter, however, as they dealt with more uniform classes, where no defense was raised as to any of the class members' status as an independent contractor. Thus, no independent contractor inquiries were necessary.

The full definition for each subclass is set out in Appendix A of Plaintiffs' Moving Brief, but each State Class is largely defined as follows:

> All persons employed by Defendants in the [pertinent state] at any time since [the initial date of the pertinent state class period], as registered representatives affiliated with Pruco Securities LLC, under an Agent's or Prudential Representative's Agreement, Statutory Agent Agreement, Senior Life Representative Agreement, Career Special Agent's Contract or

       Financial Services Associate Agreement[.]
(Pl. Cert. Br. 3).

Each of the Plaintiffs' proposed State Classes contains some members classified by Prudential as Statutory Agents and others who were not classified as such by Prudential.

Prudential contends that the certification of the classes is not warranted here, as factual differences exist between individual Statutory Agents and also between Statutory Agents and the other members of each Subclass, and that the Statutory Agents are independent contractors exempt from the protection of wage and hour law. Prudential argues that in Hawaii, Illinois, Ohio, and Washington, individual inquiries as to Prudential's actual "exercise of control" over each Statutory Agents are necessary to determine whether or not they are exempt from the protection of wage and hour law. (Def. Opp. Br. 23, fn. 32). Plaintiffs do not seem to dispute this contention. *(See*, Pl. Cert. Br., Pl. Rep. Br.). Prudential further argues that in so-called "right to control" states, such as California, New Jersey, New York, Oregon, and Pennsylvania, individualized evidence of Prudential's actual "exercise of control" is also necessary to determine whether or not agents are exempt from wage and hour law protections. (Def. Opp. Br. 23).

The hallmark of any analysis of independent contractor status is the need to weigh evidence of numerous factors, none of which is solely determinative. *See, e.g.*, Bamgbose v. Delta-T Group, Inc., 684 F. Supp. 2d 660 (E.D. Pa. 2010)(internal citations omitted). In Bamgbose, certification was ultimately denied in a case where individual analyses were required to determine whether healthcare workers were independent contractors. *See also*, Edwards v. Publrs. Circulation Fulfillment, Inc., 268 F.R.D. 181, 184 (S.D.N.Y. 2010) (denying class

certification in a case governed by New York state law, where the court rejected an outright "right to control" analysis in favor of a test considering multiple factors, applied on an individual basis to determine independent contractor status).

The parties here also disagree as to the meaning of <u>Lowe v. Zarghami</u>, a case where the New Jersey Supreme Court discussed how to properly analyze the status of independent contractors in New Jersey. This is important because the contracts of a large number of the Statutory Agents in this case are governed by New Jersey law. (*See, e.g.*, ECF 213, Ex. 10 at § 18). Plaintiffs interpretation of <u>Lowe</u> is that an employers "right to control" alone is dispositive of Statutory Agents status. (Pl. Rep. Br. 11). Conversely, Prudential states that the <u>Lowe</u> control test assesses four factors, including the "right to control," but that factor, alone, is not determinative. (Def. Opp. Br. 24). The Court agrees with Prudential's interpretation. In <u>Lowe</u>'s analysis of the control test, the court lists four factors that must be considered in determining a workers's status: (1) the degree of control exercised by the employer over the means of completing the work; (2) the source of the worker's compensation; (3) the source of the worker's equipment and resources; and (4) the employer's termination rights. 158 N.J. 606, at 616. (internal citation omitted). The Court went on to say that the greater the degree of control exercised by the employer, the more likely a worker will be considered an employee. (<u>Id</u>.) It is true that the court in <u>Lowe</u>, states "the control test is satisfied whenever the employer retains the right of control, even if the employer may not exercise actual control over the worker." (<u>Id</u>.) (quoting, <u>Sloan v. Luyando</u>, 305 N.J. Super. 140, 148 (App.Div. 1997). Reading <u>Sloan</u>, however, it appears that the Appellate Division only began its inquiry as to independent contractor status by looking at right to control. (305 N.J. Super, 140 at 148). The Appellate Division's analysis

7

continued by looking at the "relative nature of the work" test, which considered multiple additional factors. (Id.) (internal citations omitted). It appears then, that more needs to be considered under New Jersey law then an employers perceived "right to control."

Thus if Prudential raises an independent contractor defense, the law in New Jersey, as well as in a multitude of other states where Plaintiffs seek certification of Subclasses, will require an individual analysis of those classified as Statutory Agents in order to determine whether or not they are exempt from the applicable state wage and overtime laws.

Prudential's independent contractor defense applies to a significant cross-section of each Subclass, and will require individualized fact inquiries in each case. The Court will be tasked with considering Prudential's day-to-day control over the conduct of a Statutory Agent's business. As Prudential points out, some agents hire, pay, and supervise their own support staff, rent or own office space, invest in office equipment and furniture and supplies, and seem to conduct business in other ways that indicate a high level of independence. *See, e.g.*, Declaration of Richard Presky ¶ 9; Declaration of Stephanie Sherman ¶ 16. (Aug. 30, 2010, ECF 234, 229). Prudential further argues in its Opposition Brief that the deposition testimony of certain named Plaintiffs indicates that Prudential only supervises in a compliance manner for the purposes of complying with FINRA, and not in an operational manner. (Def. Opp. Br. 27). Additionally, Prudential cites John Gordon's Declaration (Aug. 30, 2010, ECF No. 231) that Statutory Agents are skilled salespersons with well-developed contacts and portable licenses, registration transferable to other companies, and that some Prudential agents may affiliate with other insurers or become independents, associated with other broker-dealers. (Def. Opp. Br. 28) In sum, Prudential argues that numerous factors exist as to the varying degree of control exhibited over

Statutory Agents, warranting individualized inquiries.

Plaintiffs acknowledge that agents designated as Statutory Agents exist within each Subclass, but instead argue that the difference in agent designations is readily manageable because common evidence shows Prudential's actual right to control the means and manner of Statutory Agents work. (Pl. Rep. Br. 11). Plaintiffs contend that Prudential required Statutory Agents to carry out work using Prudential laptops, software and applications that far exceed the compliance requirements of FINRA. (Id.). Additionally, Plaintiffs argue that Statutory Agents' business is not as portable as Prudential states, as a post-termination non-compete agreement exists, and because the transfer of a book of business is a privilege restricted to a minority of high-producing agents. (Pl. Rep. Br. 13). Even if the portability of a book of business is only available to certain Statutory Agents, this is still a factor that leaning in favor of the independence of those agents.

The number of individual State Subclasses that exist here, coupled with the potential for individualized inquiry, and the individual inquiry that will be necessary regarding the independent contractor status of at least some of the members of each Subclass, the Court foresees significant difficult in how this case will be managed and in how it will play out before a jury at trial. The need for individualized inquiries to address Prudential's defense has the potential to cause confusion in its resolution  Accordingly, the manageability issues presented by Plaintiffs' Proposed Class prevent the Proposed Class from satisfying the requirements of Rule 23(b)(3).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion is **denied**. An appropriate Order accompanies this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date:         January 18, 2013
Orig.:        Clerk
cc:           All Counsel of Record
              Hon. Mark Falk, U.S.M.J.
              File