**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOUDER, et al., <br><br>               Plaintiffs, <br><br>   v. <br><br> PRUDENTIAL FINANCIAL, INC., et al., <br><br>               Defendants. | Civil Action No.: 2:06-04359 <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court upon the Motion of Plaintiffs Jeffrey Bouder, John Costa, Ryan Holmes, Timothy Munson, Christine Musthaler, Robert Paventi, Steven Song, Alex Tejada, David Uchansky, and Jim Wang (collectively "Plaintiffs") to Certify Class. Plaintiffs seek class certification of four state classes comprised of insurance agents who were employed by Defendants Prudential Financial, Inc. and the Prudential Insurance Company of America (collectively "Prudential" or "Defendants") either as "Prudential Representatives", or as "Financial Services Associates" in the states of California, Illinois, New York, and Pennsylvania. Also pending before the Court is the Motion of Defendants to Strike the Expert Report of David M. Denmark. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. For the reasons set forth below, Plaintiffs' Motion to Certify Class is granted in part and denied in part, and Defendants' Motion to Strike the Expert Report of David M. Denmark is granted.

## I.   BACKGROUND[1]

### A.   Factual Background

#### 1.   Positions at Prudential

Prudential is a financial services company that maintains a field force of insurance agents. In the past, the field force consisted almost entirely of Prudential Representatives, who were unionized employees.  Prudential Representatives were parties to what was known as the "Agent's Agreement" or the "Prudential Representatives Agreement."  Prudential Representatives were compensated by commissions based on the business they wrote for Prudential.  They also received quarterly bonuses if they met business targets set by the company, pursuant to terms and schedules set out in their collective bargaining agreements ("CBAs") with Prudential.

In 2000, Prudential stopped hiring Prudential Representatives and began to shift its field force to the Statutory Agent form of contract, which treated the agents as independent contractors rather than employees.  The Prudential Representative position was eliminated entirely in 2006.  Also around 2000, Prudential initiated the Financial Services Associate ("FSA") program to train new agents.  After a ten-week training period that allowed the agent to obtain necessary licenses, the agent signed an FSA Agreement and began working as an employee of Prudential.  If the FSA met production targets and other requirements, he or she was able to complete the program in two years.  The FSA would then re-contract with Prudential for the long term position of Statutory Agent.  In 2007, Prudential began to compensate on the same basis as Statutory Agents—by commissions and production based-bonuses.

---

[1] The facts are taken from the parties' pleadings.

**2.** **Prudential's Alleged Practice of Requiring Class Members to Pay for Business Expenses Out of Their Earnings**

Plaintiffs state that under uniform policies applicable to Prudential Representatives and nationwide, Prudential charged "payroll deductions" to Class Members' compensation accounts in order to recover from them the cost of a number of work-related services and facilities that Prudential provided to them. Plaintiffs state that a payroll deduction was a charge that appeared on a Class Members' account each pay period, applied to his or her compensation after taxes. Plaintiffs assert that payroll deductions did not change the taxable earnings that Prudential reported for each Class Member to the IRS, nor did they affect the amount of compensation on which Prudential calculated a Class Member's pension entitlement and other benefits. Plaintiffs also claim that Prudential's employment contracts with Class Members did not contain a provision for these kinds of payroll deductions. The types of payroll deductions alleged by Plaintiffs included the following: office rent deductions (for Class Members who occupied offices instead of cubicles), marketing assistant deductions (for Class Members who decided to use an assistant to help with clerical and marketing work), liability insurance deductions, and deductions for office supplies and marketing materials. Alternatively, Class Members had the option of purchasing a number of work-related services from a third party, as long as the service was in compliance with Prudential's rules and regulations. Plaintiffs also assert that when an FSA wrote new business, Prudential advanced the compensation on all the first year premiums it expected to receive, before all premiums were due or had actually been paid to Prudential by the customer. Plaintiffs further claim that Prudential recaptured earned compensation if a customer allowed the underlying policy to lapse.

### 3.     The Class Member's Alleged Uncompensated Overtime Hours

Plaintiffs assert that Class Members regularly worked more than forty hours per week, including regular evening and weekend work.  Plaintiffs state that Prudential's "Model Weekly Schedule" for FSAs demonstrates that agents were expected to work long hours.  Plaintiffs claim that the responsibilities Prudential required Class Members to perform were aligned with industry-wide custom and practice for Financial Industry Regulatory Authority ("FINRA") registered representatives and their employers, pursuant to which a registered representative's primary duty was the provision of individualized financial advice to current and prospective customers.  This contention is elaborated upon in the expert report of David M. Denmark (the "Denmark Report") submitted by Plaintiffs.  Plaintiffs claim that despite the fact that their primary duty was to render financial advice, Prudential classified all Class Members as "exempt salespersons" who were exempt from labor laws and therefore not entitled to overtime pay.

### B.     Procedural Background

Plaintiffs commenced this case on September 15, 2006 as a collective and class action pursuant to the Fair Labor Standards Act ("FLSA") and Pennsylvania law (ECF No. 1).  Plaintiffs amended their Complaint on January 15, 2009 (ECF No. 102), March 16, 2009 (ECF No. 110), and January 20, 2010 (ECF No. 140), eventually including eighteen state law subclasses based on the law of eleven different states.  On February 15, 2010, Defendants filed a Motion for Summary Judgment (ECF No. 145).  To Support its Opposition, Plaintiffs filed the Denmark Report. (ECF No. 175, Ex. 1.)  Defendants filed a Motion to Strike the Denmark Report on April 23, 2010 (ECF No. 182).  On May 21, 2010, Magistrate Judge Mark Falk granted Defendants' Motion to Strike the Denmark Report, finding that the untimeliness of the Report prejudiced Defendants (ECF No. 199).  On July 15, 2010, Plaintiffs filed a Motion to Certify Class (ECF No. 211), and on July 16,

2010, they resubmitted the Denmark Report in connection with this motion (ECF No. 213, Ex. 12). On August 31, 2010, Judge Dennis M. Cavanaugh granted Defendants' Motion for Summary Judgment as to the FLSA claims (ECF 242).

On January 18, 2013, Judge Cavanaugh denied Plaintiffs' Motion for Certification of their state law claims, finding that the determination of whether Statutory Agents were independent contractors, and therefore exempt from the applicable state wage and overtime laws, would require individual analyses (ECF No. 278). The Denmark Report was not addressed in this Opinion. On February 5, 2013, Plaintiffs filed a Motion for Reconsideration, seeking to have the Court vacate its prior decision, or in the alternative, allow Plaintiffs permission to renew their Motion for Class Certification with appropriate modifications (ECF No. 279). Judge Cavanaugh granted Plaintiffs' Motion for Reconsideration on July 22, 2013 and allowed Plaintiffs to file a renewed class certification motion (ECF No. 281).

On September 9, 2013, Plaintiffs filed the instant Motion to Certify Class, relying in part on the Denmark Report (ECF No. 287). Defendants filed an Opposition on October 15, 2013 (ECF No. 292). In their Opposition, Defendants renew their Motion to Strike the Denmark Report. Plaintiffs filed a Reply on November 5, 2013 (ECF No. 309).

### C.    The Proposed Classes

#### 1.    The Illinois Class

The Illinois Class is represented by Plaintiffs Homes and Munson. The period for this Class begins on December 15, 2005. The Class is comprised of current and former FSAs, and is estimated to include over 150 members.

Under Illinois law, employers are required to compensate employees at an overtime rate of one and one half times the employee's regular rate for all hours worked in excess of forty hours in

any workweek.  820 ILCS 105/4(a).  Thus, the Illinois Class is defined as follows:

> All persons employed by Defendants in the State of Illinois who, at any time since December 15, 2005, worked more than 40 hours in any workweek under a Financial Services Associate Agreement.

Additionally, the Class Members assert waiting time claims for the overtime wages that were not timely paid to them.

### 2.     The Pennsylvania Class

The Pennsylvania Class is represented by Plaintiff Bouder.  The period for this Class begins on September 15, 2003. The Class is comprised of Prudential Representatives, and includes approximately 123 individuals.

Pennsylvania law prohibits deductions from an employee's earned wages unless provided by law or authorized by regulation of the Department of Labor and Industry.  43 P.S. § 260.3. Further, the Pennsylvania Minimum Wage Act requires that an employee's time in excess of forty hours in any workweek be compensated at rate of one and one half times the regular rate.  43 P.S. § 333.104(c); 34 Pa. Code § 231.41.  Thus, the Pennsylvania Class includes the following two subclasses:

> All persons employed by Defendants in the State of Pennsylvania who, at any time since September 15, 2003,[2]
>
> (a) received compensation diminished by deductions relating to office rent, marketing assistants, liability insurance, office supplies or marketing materials, for work under an Agent's or Prudential Representative's Agreement (the "Pennsylvania Deductions Subclass"); or

_____

[2] The proposed class reads in Plaintiffs' Motion as "All persons employed by Defendants in the State of Pennsylvania who, at any time since *December 15, 2000* . . . ." (Pls.' Mot. at 5) (emphasis added).  This Court assumes that the December 15, 2000 date is an error, as Plaintiffs explicitly state in their Motion that the Class period for the Pennsylvania Class begins on September 15, 2003 (see id.).

6

> (b) worked more than 40 hours in any workweek under an Agent's
> or Prudential Representative's Agreement (the "Pennsylvania
> Overtime Subclass").

The Pennsylvania Class Members also assert waiting time claims for the wages that were not

timely paid to them.

### 3.    The New York Class

The New York Class includes both Prudential Representatives and FSAs, and is

represented by Plaintiffs Paventi and Tejada. The period for this class begins December 15, 2002.

Plaintiffs estimate that the Class contains over 500 members, including about seventy-four former

Prudential Representatives and over 400 current and former FSAs.

Under New York law, deductions from an employee's earned wages are generally

prohibited. See N.Y. Lab. Law § 193(1). Further, employers must pay employees overtime wages

at a rate of one and one half times the regular rate. NYCRR 142-2.2. Thus, the New York Class

includes the following four subclasses:

> All persons employed by Defendants in the State of New York who,
> at any time since December 15, 2002,
>
> (a) received compensation diminished by deductions relating to
> office rent, marketing assistants, liability insurance, office supplies
> or marketing materials, for work under an Agent's or Prudential
> Representative's Agreement (the "New York Prudential
> Representative Deductions Subclass");
>
> (b) received compensation diminished by the aforementioned
> deductions, or by deductions relating to recapture of earned
> commissions, for work under a Financial Services Associate
> Agreement (the "New York FSA Deductions Subclass");
>
> (c) worked more than 40 hours in any workweek under an Agent's
> or Prudential Representative's Agreement (the "New York
> Prudential Representative Overtime Subclass"); or
>
> (d) worked more than 40 hours in any workweek under a Financial
> Services Associate Agreement (the "New York FSA Overtime

Subclass").

### 4.    The California Class

The California Class includes both Prudential Representatives (represented by Plaintiffs Costa and Uchansky) and FSAs (represented by Plaintiffs Misthaler, Song, and Wang).  The period for this Class begins on March 20, 2004.  Plaintiffs estimate that the California Class contains over 500 members, including about 169 former Prudential Representatives and over 300 current and former FSAs.

In addition to prohibiting certain wage deductions, the California labor code requires employers to reimburse their employees for all necessary work expenditures.  Cal. Lab. Code §§ 2121, 2802(a).  Further, California law requires overtime pay when employees work in excess of forty hours in a workweek, or over eight hours in a single workday. Cal Lab. Code § 510(a).  Thus, similar to the New York Class, the California Class includes the following four subclasses:

> All persons employed by Defendants in the State of California who, at any time since March 20, 2004,
>
> (a) received compensation diminished by deductions relating to office rent, marketing assistants, liability insurance, office supplies or marketing materials, or were not reimbursed by Defendants for their expenditures on a private office, marketing assistant, or liability insurance, for work under an Agent's or Prudential Representative's Agreement (the "California Prudential Representative Deductions Subclass");
>
> (b) received compensation diminished by the aforementioned deductions or by deductions relating to recapture of earned commissions, or were not reimbursed as described above, for work under a Financial Services Associate Agreement (the "California FSA Deductions Subclass");
>
> (c) worked more than 40 hours in any workweek, or more than 8 hours in any workday, under an Agent's or Prudential Representative's Agreement (the "California Prudential Representative Overtime Subclass"); or

8

> (d) worked more than 40 hours in any workweek, or more than 8 hours in any workday under a Financial Services Associate Agreement (the "California FSA Overtime Subclass").

The California Overtime Subclasses also bring claims due to Prudential's alleged failure to provide meal and rest breaks.  See Cal Lab. Code § 226.7 and 8 CR§ 11040(12).  Further, the California Class Members assert waiting time claims for wages that were not timely paid to them.

## II.    STANDARD OF REVIEW

The requirements for class certification are set forth in Federal Rule of Civil Procedure 23. Under Rule 23, the moving party bears the burden of showing that the proposed class satisfies the four prerequisites of Rule 23(a), and that that the action can be maintained under at least one subsection of Rule 23(b).  See Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 184-84 (3d Cir. 2001); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).

The four prerequisites of Rule 23(a) are satisfied when:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "Commonly referred to as numerosity, commonality, typicality, and adequacy of representation, these four requirements are 'meant to assure both that the class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances.'"  Banda v. Corzine, 2007 WL 3243917, at *15 (D.N.J. Nov. 1, 2007) (quoting Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994)).  Upon satisfying Rule 23(a), the moving party must then show that the putative class falls under at least one of the subsections of Rule 23(b).  Id. at *18.  In the present case, Plaintiffs bring their claims under Rule 23(b)(3), which is satisfied when

9

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

Courts deciding whether to certify a class under Rule 23 must undertake a "rigorous analysis" and consider all relevant evidence and arguments presented by the parties. See In re Hydrogen Peroxide Antitrust Lit., 552 F.3d 305, 309-10 (3d Cir. 2008).  Decisions to certify a class require "findings by the court, not merely a threshold showing" by the moving party, that the requirements of Rule 23 are met. Id. at 307.  The Court "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits." Id.

## III.   **DISCUSSION**

### A.     **The New York, Pennsylvania, and California Deduction Subclasses**

#### 1.     **Preemption**

In addition to arguing that the Deduction Subclasses are not amenable to class treatment, Defendants contend that the Prudential Representatives Deduction Subclasses are preempted by § 301 of the Labor Management Relations Act, citing to a number of cases that support the proposition that federal law preempts state law when interpretation of the terms of a labor contract is at issue (See Def.'s Opp'n at 33).  However, as Plaintiffs point out in their Reply, they do not challenge any terms that were in the Prudential Representatives' CBAs. Instead, Plaintiffs challenge Prudential's requirement that employees give up earnings for payroll deductions that were *not* mentioned in the CBAs.  Thus, this Court denies Defendants' preemption argument and will address whether Plaintiffs have met the requirements to certify the Deduction Subclasses.

### 2.      Rule 23(a) Requirements

#### a)      Numerosity

There is no certain minimum number of plaintiffs required in order to bring a class action suit.  Stewart v. Abraham, 275 F.3d 220, 226 (3d Cir. 2001).  However, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  Id. at 226-27.  Here, Plaintiffs estimate that there are far more than forty members in each class; specifically 123 in the Pennsylvania Class and over 500 in both the New York and California Classes.  As such, Plaintiffs have satisfied the numerosity requirement of Rule 23(a).

#### b)      Commonality

To meet the commonality requirement, Plaintiffs must show that they "share at least one question of fact or law with the grievances of the prospective class."  In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009).  Here, the Deductions Subclasses all allege that Defendants violated state laws that prohibit an employer from making certain deductions from an employee's earnings, and, in California, a law that requires reimbursement of an employee's necessary work expenditures.  Common questions include whether Defendants' policies violated such state laws regarding deductions and whether Defendants failed to reimburse necessary work expenditures in California.  As such, Plaintiffs have easily met the commonality requirement of Rule 23(a).

#### c)      Typicality

To determine whether Plaintiffs have demonstrated typicality, courts ask "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  Beck v. Maximus, Inc., 457 F.3d

291, 295-96 (3d Cir. 2006) (citation omitted); see also Stewart, 275 F.3d at 227 ("The typicality

inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent

members."). The Third Circuit has stated the following regarding typicality:

> [T]he proper consideration in assessing typicality . . . include three
> distinct, though related, concerns: (1) the claims of the class
> representative must be generally the same as those of the class in
> terms of both (a) the legal theory advanced and (b) the factual
> circumstances underlying that theory; (2) the class representative
> must not be subject to a defense that is both inapplicable to many
> members of the class and likely to become a major focus of the
> litigation; and (3) the interests and incentives of the representative
> must be sufficiently aligned with those of the class.

Schering Plough, 589 F.3d at 599. Here, the first element is met because Plaintiffs assert the same

legal theories against Defendants that they assert on behalf of the Classes (violation of state labor

laws concerning deductions), and challenge the same conduct of Defendants as they do on behalf

of the Classes (making unlawful deductions from Class Members' earnings). See Weisfeld v. Sun

Chem. Corp., 210 F.R.D. 136, 140 (D.N.J. 2002 aff'd sub nom. Weisfeld v. Sun Chem. Corp., 84

F'appx 257 (3d Cir. 2004) ("[I]n instances wherein it is alleged that the defendants engaged in a

common scheme relative to all members of the class, there is a strong assumption that the claims

of the representative parties will be typical of the absent class members." (citation committed)).

With respect to the second factor, there are no unique defenses that only apply to certain Class

Members. Finally, concerning the third factor, the representatives and the Class Members share

the same interest—proving that Defendants have violated state labor laws. As such, Plaintiffs have

satisfied the typicality requirement of Rule 23(a).

#### d)      Adequacy of Representation

The purpose of the adequacy inquiry is to "uncover conflicts of interest between named

parties and the class they seek to represent." Beck, 457 F.3d at 296 (quoting Amchem Products,

Inc. v. Windsor, 521 U.S. 591, 625 (1997)).  Two inquiries must be made in order to determine adequacy.  Schering Plough, 589 F.3d at 602.  The first inquiry looks at the qualifications of the counsel that is representing the class.  Id. Here, no issues have been raised regarding Plaintiffs' counsel.  See id. (ending this inquiry after stating that no issues have been raised regarding counsel). The second inquiry looks at whether there are conflicts of interest between the representatives and the classes.  Id.  "There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and this second part of the adequacy inquiry that focuses on possible conflicts interest."  Id.  As discussed above, there are no unique defenses only applicable to certain Class Members, and the interests of all Class Members are aligned.  As such, Plaintiffs have satisfied the adequacy requirement of Rule 23(a).

### 3.      Rule 23(b)(3)

#### a)      Predominance Requirement

Under the predominance requirement, Plaintiffs must show "that questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23.  Because the New York and Illinois Classes involve different questions of law and fact than the California Class, these Classes will be addressed separately.

#### (1)      New York and Pennsylvania Classes

As discussed above, both New York and Pennsylvania generally prohibit deductions from an employee's earnings.  Plaintiffs assert that Subclass Members' wage deduction claims under New York and Pennsylvania law "depend on standardized contracts and compensation programs that Prudential maintained for its Prudential Representatives and FSAs, which clearly defined their earned compensation" (Pls.' Mot. at 26).  Prudential, however, argues that a number of express or

13

implied contracts existed—by course of conduct—beyond the written policies addressed by Plaintiffs, and therefore that individual inquiries are required to ascertain what specific agreements each agent had with Prudential. To support this contention, Prudential relies on Pachter v. Bernard Hodes Group Inc., 10 N.Y.3d 609, 618 (2008), a case in which the New York Court of Appeals found that when a commission is "earned" can be regulated by an implied agreement between the parties. However, as Plaintiffs point out, the court in Pachter examined the parties' course of dealing due to the "absence of a governing written instrument." Id. In the present case, Plaintiffs bring their claims based on Prudential's company-wide written policies. See Baer v. Chase, 392 F.3d 609, 616-17 (3d Cir. 2004) ("There cannot be an implied-in-fact contract if there is an express contract that covers the same subject matter."). Therefore, Prudential's argument—that evidence of each individual Plaintiffs' subjective understanding would be required at trial—is not availing.

Prudential also argues that agents were subject to practices and agreements that changed over time, and therefore agents within the same Class during different periods must be treated differently. The Court rejects this argument in light of the fact that Plaintiffs have separated their Classes into Subclasses in order to specify which policies and practices each type of agent is challenging. Prudential fails to point to any specific variations in Prudential's policy over time that would disrupt the structure of Plaintiffs' Subclasses.

Finally, Prudential argues that the analysis for each agent will differ based on factors such as whether the agent had a private office, whether he or she employed a marketing assistant, etc. However, Plaintiffs correctly argue that the determination of whether Defendants violated state laws does not depend on the specific deductions made to each Class Members' earnings. Rather, this inquiry is only relevant to the damages. See In re Motor Fuel Temperature Sales Practices Litig., 279 F.R.D. 598, 610 (D. Kan. 2012) (certifying a class action where plaintiffs "allege a

common injury based on common conduct" and the "claims are not inextricably intertwined with questions of what damages particular class members suffered"); see also Daskalea v. Washington Humane Soc., 275 F.R.D. 346, 368 (D.D.C. 2011) (noting that "predominance will exist where issues that may be proven or disproven through 'generalized evidence' on a 'simultaneous, class-wide basis' overshadow issues that require examination of each class member's individualized circumstances.)

Therefore, this Court finds that Plaintiffs have met the predominance requirement of Rule 23(b)(3) for the New York and Pennsylvania Deductions Subclasses.

### (2)    California Class

As discussed above, in addition to California law prohibiting deductions from an employee's earned wages, it also requires employers to reimburse employees for necessary business expenditures.  Prudential argues that whether an expenditure is "necessary" is a fact-intensive inquiry, and thus requires an individualized analysis for each California Class Member. In Hopkins v. Stryker Sales Corp., 2012 WL 1715091 (N.D. Cal. May 14, 2012), the plaintiffs brought a suit against their former employer, alleging, among other things, that the employer did not reimburse them for certain business expenses.  In response to the defendant's argument that individualized questions predominated in determining whether a business expense was necessary, the court stated the following:

> [The defendant's] arguments regarding the individualized nature of the necessity of certain business expenses . . . do not undermine predominance in this case.  Moreover, in these circumstances—where there is a commonly applicable expense reimbursement policy, common duties among putative class members, and expenses common to the class—whether a particular business expense was necessary is a common question that is better addressed on a motion for summary judgment or at trial than at class certification.

Id. at *10 (internal quotations and citation omitted).  See also Wilson v. Kiewit Pac. Co., 2010 WL

5059522, at *7-8 (N.D. Cal. Dec. 6, 2010) (rejecting the defendant's argument that the question of whether "expenses incurred by use of personal vehicles were necessary" required individualized factual inquiries).   Similarly, in the present case, Plaintiffs have pointed to three specific expenditures governed under Prudential's policy:

> (1) Premiums paid by subclass members to third parties for employer-mandated liability insurance coverage.

> (2) Rents paid for employer-approved private offices (permitted only after Prudential reviewed the Class Members' qualifications to open such an office, and subject to regular subsequent inspection by Prudential).

> (3) Salaries paid to employer-regulated marketing assistants (using employer-mandated agreements, and subject to Prudential training and other requirements).

(Pls.' Reply at 6) (internal citations omitted).   Thus, the question of whether such expenditures were "necessary" can be addressed on a class-wide basis. Therefore, Plaintiffs have met the predominance requirement of Rule 23(b)(3) for the California Deductions Subclasses.

### b)      Whether a Class Action is Superior to Other Methods

To assess the superiority requirement of Rule 23(b)(3), a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." In re Cmty. Bank of N. Virginia, 418 F.3d 277, 309 (3d Cir. 2005) (citation omitted).   The relevant inquiries include:

> (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Id.  When he denied class certification on January 18, 2013, Judge Cavanaugh found that there

16

would be problems managing this action if class certification were granted, taking into consideration the number of individual subclasses and the fact that individual inquiries would be necessary regarding the independent contractor status of some Class Members. (ECF No. 287 at 8). However, circumstances have changed since Judge Cavanaugh rendered that decision. First, Plaintiffs have cut down on their number of proposed subclasses.[3] Further, the problem regarding the individual inquiries of whether certain Class Members are independent contractors no longer exists, as the proposed classes that raised this issue have been removed.

Additionally, this Court agrees with Plaintiffs that "[t]he costs of litigation and the superior resources and sophistication of the Defendants are likely to deter individual plaintiffs, giving Class Members little interest in controlling separate actions" (Pls.' Mot. at 39). Finally, Defendants have set forth no reason why it would be undesirable to concentrate the litigation of Plaintiffs' claims in this forum. As such, Plaintiffs have satisfied the superiority requirement of Rule 23(b)(3) for the Deductions Subclasses.

### B.    The Overtime Subclasses

#### 1.    Illinois, New York, and Pennsylvania

Prudential asserts that Plaintiffs' Illinois, New York, and Pennsylvania Overtime Subclasses are not amenable to class treatment because Judge Cavanaugh, in his August 31, 2010 Opinion, found that the primary duty of the Class Members was sales, and that they were therefore exempt from minimum wage and maximum hour requirements under the FLSA. See 29 U.S.C. § 213(a)(1) (exempting from eligibility for overtime pay "any employee employed in a bona fide

---

[3] As set forth below, the Court further diminishes the number of subclasses due to its denial of certification for Plaintiffs' Overtime Subclasses.

executive, administrative, or professional capacity . . . or in the capacity of an outside salesman"). Thus, according to Prudential, because Plaintiffs have previously conceded that Illinois, New York, and Pennsylvania law are identical to the FLSA, Plaintiffs cannot maintain their claims under state law.  In response, Plaintiffs argue that the Court cannot rely on Judge Cavanaugh's prior decision because new evidence has since become available—namely, the Denmark Report. Prudential argues that this Court must strike the Denmark Report, pointing to its Motion to Strike filed on August 30, 2010 (ECF No. 238), and making further arguments in its Opposition to Plaintiffs' Motion for Class Certification.

This Court finds that the addition of the Denmark Report does not warrant overturning Judge Cavanaugh's finding that the primary duty of the Class Members was sales.  As discussed by Prudential, Denmark's knowledge is based on his review of the declarations of two Plaintiffs, as well as a number of documents provided to him by Plaintiffs' counsel.  Denmark has not actually spoken to a single Plaintiff in this case, nor has he read a single deposition of the twenty named Plaintiffs.  Although Plaintiffs argue in their Opposition to the Motion to Strike that Denmark also reviewed Defendants' summary judgment brief as well as Plaintiffs' opposition to that brief, this Court does not find reading briefs written by the parties' lawyers to be an adequate substitute for examining actual evidence.  Further, the Second Circuit doubted the strength of a report from Denmark under similar circumstances.  See Gold v. New York Life Ins. Co., 2011 WL 2421281, at *5 (S.D.N.Y. May 19, 2011) ("Notably, Denmark neither spoke with [plaintiff] nor read his deposition testimony, and thus did not—and could not—offer a reliable opinion as to [plaintiff]'s *actual* primary duty.  Instead, at best, Denmark's report shows only that [plaintiff]'s characterization of his job reflects a primary duty other than sales, consistent with Denmark's views on registered representatives generally.").

18

Finally, this Court accepts Prudential's arguments that the Denmark Report incorrectly focuses on the ultimate merits of Plaintiffs' claims rather than on class certification. Plaintiffs submit the Denmark Report in an attempt to overcome a decision already made by Judge Cavanaugh to grant summary judgment in favor of Defendants, and thus the merits of Plaintiffs' claim are clearly Denmark's focus. Moreover, Defendants argue, and the Court agrees, that the Denmark Report improperly sets forth legal conclusions. See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006) ("Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that 'embraces an ultimate issue to be decided by the trier of fact,' an expert witness is prohibited from rendering a legal opinion.").

Accordingly, Prudential's Motion to Strike the Denmark Report is granted, and this Court will not certify the Illinois, New York, and Pennsylvania Overtime Classes.

### 2.    California

With respect to the California Overtime Subclass, this Court cannot rely on Judge Cavanaugh's August 31, 2010 Opinion granting Defendants summary judgment as to the FLSA claims because California law provides greater protection to employees than the FLSA concerning the outside salesman exemption. See Ramirez v. Yosemite Water Co., Inc., 20 Cal. 4th 785, 797 (1999) ("By choosing not to track the language of the federal exemption and instead adopting its own distinct definition of outside salespersons,' the [California Industrial Welfare Commission] evidently intended to depart from federal law and to provide, at least in some cases, greater protection for employees."). However, the nature of California law combined with the facts of this case show that Plaintiffs cannot meet the Rule 23(b)(3) predominance test for the California Overtime Subclass.

Rather than the federal exemption—that focuses on whether an employee's "primary

function" is sales as opposed to the actual amount of time spent selling—California law "takes a purely quantitative approach, focusing exclusively on whether the individual 'works more than half the working time . . . selling . . . or obtaining orders or contracts'" Id. (quoting Wage Order No. 7-80, 2(I)). Thus, courts must consider "how the employee *actually* spends his or her time." Id. at 802 (emphasis added). In Pablo v. ServiceMaster Global Holdings, Inc., 2009 WL 524478, at *4 (N.D. Cal. Aug. 17, 2009), the plaintiffs' claim for unpaid overtime "depend[ed] on their allegation that [the defendant] misclassified all of its inspectors as exempt employees." The court acknowledged that "[w]hen an employer uses a uniform policy to classify a class of employees as exempt, courts may weigh the policy as a factor in favor of certification," but also stated that this fact "is not dispositive." Id. at *5; see also In re Wells Fargo Home Mortgage Overtime Pay Litig., 268 F.R.D. 604, 611 (N.D. Cal. 2010) ("[A]n employer's uniform exemption policy is only one of many factors that must to be taken into account in the predominance analysis."). The court then analyzed declarations submitted by the parties and found that they "reflect[ed] substantial variation in how [employees] spend their time." Id. at *6. Thus, the court denied class certification because "[the defendant's] uniform policies for classifying [employees], determining compensation, and other employment practices do not predominate over the hundreds of individualized inquiries the Court will have to perform to determine whether [employees] spend more than half their workdays doing sales outside the office." Id.

In the present case, as discussed in Judge Cavanaugh's summary judgment Opinion, agents regularly made sales at the homes of customers, away from Defendants' place of business (ECF No. 242 at 8). Further, Plaintiffs were afforded freedom in managing their daily and weekly schedules (see Pls.' Opp'n at 21 (citing declarations and transcripts)). Plaintiffs argue that Defendants are incorrect in suggesting that Plaintiffs' individual schedules weigh against class

certification because "Plaintiffs' common evidence . . . shows that, irrespective of class members' 'schedules,' Prudential at all times uniformly required them to treat proper financial advice as their primary duty" (Pls.' Reply at 13). This misses the mark. As discussed above, California law does not focus on the "primary duty" of an employee to determine whether the outside sales exemption is applicable; rather, it focuses precisely on how an employee spends his or her day. Thus, the Court finds that the question of whether an employee is an exempt salesperson will require individual inquiries.[4]

Further, with respect to Plaintiffs' meal break claims, "[b]ecause [plaintiffs'] theory of liability regarding the proposed class members' alleged nonexempt status is not suitable for class treatment, it follows that [the] meal period/rest break claims [are] also properly [] not certified." Santiago v. Amdocs, Inc., 2013 WL 5444324, at *8 (N.D. Cal. Sept. 30, 2013) (citation omitted). Accordingly, this Court will not certify the California Overtime Subclasses.

**C.     Appointment of Counsel**

Under Federal Rule of Civil Procedure 23(g), "a court that certifies a class must appoint class counsel." The Court must consider the following factors:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and

---

[4] California also has a "commissioned employees exemption" which exempts employees from overtime laws if more than half of their compensation is in the form of commissions. See Ramirez, 20 Cal. 4th at 803. This Court need not address this exemption, as it has already found the question of whether Class Members were exempt under the outside salesperson exemption would require individualized inquiries.

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(l)(A).  This Court has examined the resumes submitted by Plaintiffs' counsel (ECF No. 288, Ex. 30), and is convinced that they are capable of handling a class action of this nature.  Further, there have been no objections by Defendants to the appointment of Plaintiffs' counsel.  As such, Plaintiffs' counsel are approved and appointed as follows: Lovell Stewart Halebian Jacobson LLP, as lead Class Counsel; Winne, Banta, Hetherington, Basralian & Kahn, P.C., as Liaison Counsel; and Jerry K. Cimmet, John M. Kelson, and Kessler Topaz Meltzer & Check, LLP comprising an Executive Committee.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, **IT IS** on this 26th day of February 2015,

**ORDERED** that Plaintiffs' Motion to Certify Class is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendants' Motion to Strike the Expert Report of David M. Denmark is **GRANTED.**

_____

**CLAIRE C. CECCHI, U.S.D.J.**